No. 23-60255

---

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA; LONGVIEW
CHAMBER OF COMMERCE; TEXAS ASSOCIATION OF BUSINESS,

*Petitioners*,

v.

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

*Respondent.*

---

Petition for Review of an Order of
the Securities and Exchange Commission
Release Nos. 34-97424; IC-34906

---

## PETITIONERS' OPPOSITION TO RESPONDENT'S
## MOTION TO EXTEND REMAND PERIOD

---

Tara S. Morrissey
Tyler S. Badgley
Kevin R. Palmer
U.S. CHAMBER
LITIGATION CENTER
1615 H Street, N.W.
Washington, DC 20062
(202) 463-5337

Alexander V. Maugeri
JONES DAY
250 Vesey St.
New York, NY 10281
(212) 326-3939

Noel J. Francisco
Brian C. Rabbitt
Brinton Lucas
Charles E.T. Roberts
Ryan M. Proctor
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
(202) 879-3939
njfrancisco@jonesday.com

*Counsel for Petitioners*

## CERTIFICATE OF INTERESTED PERSONS

### No. 23-60255, Chamber of Commerce of the United States of America et al. v. United States Securities and Exchange Commission

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1.     Petitioner **Chamber of Commerce of the United States of America** has no parent corporation and no publicly held corporation owns 10% or more of its stock.

2.     Petitioner **Longview Chamber of Commerce** has no parent corporation and no publicly held corporation owns 10% or more of its stock.

3.     Petitioner **Texas Association of Business** has no parent corporation and no publicly held corporation owns 10% or more of its stock.

4.     **Counsel for Petitioners:** Noel J. Francisco, Brian C. Rabbitt, Brinton Lucas, Alexander V. Maugeri, Charles E.T. Roberts, and

Ryan M. Proctor of JONES DAY; and Tara S. Morrissey, Tyler S. Badgley, and Kevin R. Palmer of the Chamber of Commerce of the United States of America.

5.     Respondent **United States Securities and Exchange Commission**.

6.     **Counsel for Respondent:** Theodore Weiman, Joseph Freda, Dominick V. Hill, and Ezekiel Levenson.

7.     *Amicus Curiae* **Investor Choice Advocates Network** represents that it is a nonprofit organization that has no parent corporation and that no publicly held corporation owns 10% or more of its stock.

8.     **Counsel for *Amicus Curiae* Investor Choice Advocates Network:** Angela Laughlin Brown of Gray Reed & McGraw LLP and Nicolas Morgan of Paul Hastings LLP.

9.     *Amicus Curiae* **Manhattan Institute** represents that it is a nonprofit corporation that has no parent corporation and that no publicly held corporation owns 10% or more of its stock.

10.     **Counsel for *Amicus Curiae* Manhattan Institute:** Helgi C. Walker and Jeffrey Liu of Gibson, Dunn & Crutcher LLP; Jennifer L.

Mascott and R. Trent McCotter of Separation of Powers Clinic, Antonin Scalia Law School; and Ilya Shapiro of Manhattan Institute.

11.     *Amici Curiae* **S.P. Kothari and James Overdahl** are former SEC Chief Economists.

12.     **Counsel for *Amici Curiae* Kothari and Overdahl:** Megan Brown, Thomas M. Johnson, Jr., Kevin Muhlendorf, and Michael J. Showalter of Wiley Rein LLP.

13.     *Amicus Curiae* **Better Markets, Inc.** represents that it has no parent corporation and that no publicly held corporation owns 10% or more of its stock.

14.     **Counsel for *Amicus Curiae* Better Markets, Inc.:** John Paul Schnapper-Casteras of Schnapper-Casteras PLLC.

15.     *Amici Curiae* **Matthew D. Cain, Alex Edmans, Brian Galle, Vyacheslav (Slava) Fos, Edwin Hu, Robert Jackson, Bradford Lynch, Joshua Mitts, Shivaram Rajgopal, and Jonathon Zytnick** represent that they are scholars of law and finance.

16.     **Counsel for *Amici Curiae* Matthew D. Cain, Alex Edmans, Brian Galle, Vyacheslav (Slava) Fos, Edwin Hu, Robert Jackson, Bradford Lynch, Joshua Mitts, Shivaram Rajgopal, and**

**Jonathon Zytnick:** Julie Goldstein Reiser and Laura H. Posner of Cohen Millstein Sellers & Toll PLLC.


/s/ *Noel J. Francisco*

Noel J. Francisco
*Counsel for Petitioners*

## INTRODUCTION

This Court has already given the U.S. Securities and Exchange Commission (SEC) ample opportunity to save its deeply flawed rulemaking—more than even required under the Administrative Procedure Act (APA). Nearly a month ago, the Court identified multiple, pervasive flaws in the Rule and gave the SEC a full 30 days to attempt to fix them. The SEC's bare-bones motion to extend the Court's remand period (Motion), filed on the eve of Thanksgiving, confirms it has not, and cannot, remedy those defects (nor the others the Court did not reach). Remarkably, the SEC makes no attempt to explain what progress it has made in the near-month since the Court issued its opinion; offers no explanation for what work remains to be done to address the problems identified by the Court; and provides no timetable for when, if ever, the Court, Petitioners, and issuers can expect that work to be completed. Instead, the SEC vaguely assures the Court that it "has worked diligently to ascertain the steps necessary to comply with the Court's remand order" and promises "to provide an update" to the Court—not to complete its work—within another two months. Dkt. 128 (Mot.) ¶¶ 2, 5.

1

The SEC is not entitled to further departure from the APA's default rule of vacatur, and its Motion comes nowhere close to explaining why the extraordinary remedy of an indefinite extension of the Court's already-generous 30-day remand period is warranted. Given the SEC's admission that it cannot meet the Court's original deadline, the Court should confirm that the Rule is vacated when that period expires. If the Commission believes it can cure the Rule's defects with a longer period, it can reissue a new rule then, following notice and comment. But there is no compelling basis to leave issuers wondering when the SEC may force them to comply with a Rule that this Court has held to be unlawful multiple times over.

The SEC's unilateral stay order provides no basis to extend the Court's remand period, either. By its terms, the order allows the SEC to lift the stay, and thus impose irreparable harm on issuers, at any time and at its unilateral discretion, even if it has not yet corrected the Rule's many defects. Moreover, without any timetable for when the SEC may deem the Rule to be in sufficient shape to justify lifting its own stay, issuers will be forced to continue incurring compliance costs preparing to implement a Rule the SEC may not be able to fix and that it could spring

on the markets at any time. And investors, too, will be left wondering what standards will govern disclosures by those issuers.

Under these circumstances, no extension of the Court's deadline is warranted. This Court instead should make clear that it meant what it said in its opinion and deny the SEC's Motion, so that if the Commission cannot meet the original deadline, the rule is vacated.

## BACKGROUND

On October 31, 2023, this Court issued an opinion holding that the Rule violated the APA in at least three respects. Dkt. 121-1 (Op.). The agency failed to respond to Petitioners' comments on how to quantify the Rule's economic effects. Op. 16-20. It did not substantiate the Rule's primary purported benefit of reducing investor uncertainty about improperly motivated buybacks. Op. 20-22, 24-25. And it did not substantiate the Rule's secondary purported benefit of promoting price discovery. Op. 22-24.

Given these errors, the Court found it "unnecessary" to address three additional objections raised by Petitioners. Op. 13 n.9. Rather than vacate the Rule immediately, the Court offered the SEC "limited time" to correct its defects. Op. 26. The Court thus issued a "limited remand" to

allow the agency to attempt to cure the Rule within 30 days—*i.e.*, by November 30. *Id.*

Over three weeks later and with just eight days to go before the deadline, the SEC on November 22—the day before Thanksgiving—filed a motion to indefinitely extend the remand period. The Motion does not explain what, if anything, the agency has done since October 31; does not identify what work remains to be done to bring the Rule into compliance with the APA; does not propose any new deadline for addressing the issues highlighted in the Court's decision; and does not explain how, if at all, the SEC proposes to address the problems with the Rule that the Court did not reach. Instead, the Motion offers only that the SEC will continue to work and will provide the Court with an "update" within another 60 days. Mot. ¶ 5.

Alongside the Motion, the agency attached its own order "stay[ing] the effectiveness of the Repurchase Rule pending further Commission action." Dkt. 128 at 7.

## ARGUMENT

Under this Court's October 31 decision, the Rule will be automatically vacated on December 1, 2023, if the SEC does not does not

remedy the problems the Court identified with the Rule. The SEC provides no justification for an extension of this deadline, and none is warranted. The SEC has forfeited any argument that this Court should further deviate from the APA's default remedy of immediate vacatur. And even setting aside forfeiture, the SEC has not and cannot identify a basis for extending the deadline.

## I.  ABSENT A FIX TO THE RULE'S DEFICIENCIES, THE RULE WILL BE AUTOMATICALLY VACATED ON DECEMBER 1.

This Court gave the SEC "limited time"—specifically, "30 days"— "to remedy the deficiencies in the rule." Op. 26. If the SEC fails to do so, this Court's opinion requires that the Rule be vacated.

Because the APA "gives courts the power to 'hold unlawful and set aside agency action[s,]' … [t]he default rule is that vacatur is the appropriate remedy" for an APA violation. *Data Mktg. P'ship, LP v. Dep't of Lab.*, 45 F.4th 846, 859 (5th Cir. 2022) (quoting 5 U.S.C. § 706(2)). This Court and others have occasionally held that they may remand to the agency without vacatur after finding an APA violation. *E.g.*, *Texas v. United States*, 50 F.4th 498, 529 (5th Cir. 2022) (*Texas I*); *Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 519 (D.C. Cir. 2020).

Courts may remand without vacatur on the condition that the agency fix any deficiencies within a set period of time. An unconditional remand, such as the one requested by the SEC now, without vacatur gives the agency the benefit of its unlawful rule for as long as it *refuses* to act. This gives the agency "little or no incentive to fix the deficient rule." *Am. Pub. Gas Ass'n v. Dep't of Energy*, 22 F.4th 1018, 1030 (D.C. Cir. 2022). "To address this problem, 'it may sometimes be prudent to require an agency to fix a deficient rule by a time certain, at which the rule will automatically be vacated.'" Wright & Miller, 33 *Fed. Prac. & Proc.* § 8382 (2023); *see, e.g.*, *Cent. Forwarding, Inc. v. ICC*, 698 F.2d 1266, 1285 (5th Cir. 1983); *Am. Pub. Gas.* 22 F.4th at 1030-31; *Chamber of Com. of U.S. v. SEC*, 443 F.3d 890, 909 (D.C. Cir. 2006).

By issuing a limited remand without vacatur for a fixed period, this Court made clear that the Rule will be automatically vacated unless the SEC can correct the defects in the rule within 30 days of this opinion." Op. 26. Although the opinion does not explicitly address the consequences of failing to do so, the directive only makes sense if vacatur takes effect at that time. Since vacatur is the "default," it presumptively applies to an APA violation unless the Court indicates otherwise. *Data Mktg.*, 45

F.4th at 859. And here, the only deviation the Court made was to afford the SEC "limited time" to correct its mistakes. Op. 26. Further, without the backstop of vacatur, the 30-day condition would be meaningless; the effect of the remand would be the same as an unconditional remand without vacatur, and the whole point of imposing a deadline on the agency is to avoid that result. 33 *Fed. Prac. & Proc.* § 8382. If the SEC cannot fix the Rule's deficiencies by November 30, the Rule must go.

## II. THE COMMISSION HAS FORFEITED ANY ARGUMENT FOR AN EXTENDED REMAND PERIOD.

Prior to its November 22 Motion, the SEC had never argued that this Court should deviate from the APA's default remedy of vacatur. Even now, the SEC's reasons for extending the deadline are too skeletal to properly present the issue, much less justify a further departure from the default rule.

An agency bears the burden of showing why a remedy short of vacatur is appropriate. *Data Mktg.*, 45 F.4th at 859. Thus, this Court will vacate an unlawful agency action where "[t]he agency explains neither how the agency action can be saved nor how vacatur will cause disruption." *Texas v. Biden*, 20 F.4th 928, 1001 (5th Cir. 2021) (*Texas II*)

(cleaned up), *rev'd on other grounds*, 142 S. Ct. 2528 (2022). Or where it "makes no vacatur argument" at all. *Id.* (cleaned up). Consequently, where an agency "makes no developed argument" that "the default rule" of "vacatur" is not warranted, the agency has "forfeited the argument." *Data Mktg.*, 45 F.4th at 859-60.

Petitioners were explicit from the outset that they sought vacatur of the Rule. Opening Br. 67. Yet the SEC did not challenge the propriety of that remedy in its Response Brief, forfeiting any entitlement to remand without vacatur. *See Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 796 (5th Cir. 2013) (argument that "has not been meaningfully briefed" in party's response brief is forfeited). While this Court generously gave the SEC one last chance to avoid vacatur by remedying the Rule's defects within 30 days, Op. 26, the agency failed to adequately support its request even in its Motion.

A party cannot preserve a claim with "conclusory assertions" lacking "any supporting argument or authority." *JTB Tools & Oilfield Servs., LLC v. United States*, 831 F.3d 597, 601 (5th Cir. 2016). The SEC's Motion asserts that the agency cannot fix the Rule without "additional time." Mot. ¶ 2. But it fails to "identify relevant legal standards" for

remand without vacatur or explain why, under those standards, its need for more time warrants an extension of the deadline. *Id.* Nor does the Motion cite "any relevant Fifth Circuit cases" to support its request for relief. *JTB Tools*, 831 F.3d at 601. If anything, the agency's admitted need for more time shows that the Rule has "serious[] … deficiencies" that the agency "likely" cannot "justify." *Texas I*, 50 F.4th at 529.

## III.  AN INDEFINITE REMAND PERIOD IS NOT WARRANTED.

Forfeiture aside, the SEC has not identified any basis for extending its deadline for correcting the Rule. Rather, this Court should follow through with vacating the Rule on December 1 if the SEC fails to act. "Two factors determine whether vacatur is warranted: '(1) the seriousness of the deficiencies of the action, that is, how likely the agency will be able to justify its decision on remand; and (2) the disruptive consequences of the vacatur.'" *Texas I*, 50 F.4th at 529; *see Texas II*, 20 F.4th at 1000 (noting this Court has adopted "the same test" as the D.C. Circuit). Both remand factors independently show that vacatur—not an extension—is warranted here.

Nor is the SEC's stay order—which allows the SEC to let the Rule take effect at any time and forces issuers to continue to incur compliance

costs—adequate to mitigate the harms an extended and indefinite remand period would cause.

## A. The Rule's Deficiencies Are Fundamental.

"Remand without vacatur is likely not appropriate" when "'it is far from certain' that [the agency] could cure its mistakes with further consideration." *All. for Hippocratic Med. v. FDA*, 78 F.4th 210, 255 (5th Cir. 2023). Instead, remand without vacatur is typically warranted only in cases involving an "agency's failure [] adequately to explain why it chose one approach rather than another for one aspect of an otherwise permissible rule." *Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 199 (D.C. Cir. 2009). When a regulation has "fundamental substantive defects," on the other hand, the default rule must prevail. *Texas I*, 50 F.4th at 529. And when an agency is not "able to rehabilitate" its existing decision, "vacatur is clearly warranted." *Long Island Power Auth. v. FERC*, 27 F.4th 705, 717 (D.C. Cir. 2022).

A further extension of the Court's remand without vacatur is plainly unwarranted under this framework. It is vanishingly unlikely the SEC can cure the Rule's defects, even if given more time. It is impossible to reissue the Rule in its current form, because the Rule is fatally unclear.

10

The agency has already declined to defend the factual finding necessary to rehabilitate the Rule's primary rationale—that improperly motivated buybacks occur in significant numbers. And the Rule suffers from a host of other deficiencies that are at minimum not easy to fix.

1.    To start, vacatur is warranted because the SEC will have to change the Rule on remand. An incomprehensible regulation cannot be reasonable or reasonably explained, both because of the unfairness to regulated parties and because it is impossible to reasonably weigh the costs and benefits of a regulation without knowing what it requires. This Court held that the Rule's benefits were "inadequately substantiated" in part because its "requirements are clear as mud." Op. 23-24. At minimum, then, the SEC will have to revise the text of the Rule to specify what exactly an issuer must do to satisfy the rationale-disclosure requirement. That leaves no justification for keeping the Rule in its current, inscrutable form in the interim. *Long Island Power Authority*, 27 F.4th at 717.

2.    Even if the Rule were intelligible, the SEC's failure to substantiate its purported benefit of reducing investor uncertainty about improperly motivated buybacks is a fundamental defect unlikely to be

cured on remand. This flaw is not just a failure to discuss a subsidiary issue on which the SEC may well have a ready and reasonable answer. Rather, the Commission failed to give a sensible justification for "the rule's primary benefit," an "error" that "permeates—and therefore infects—the entire rule." Op. 24-25. If an agency's core rationale for why a rule should exist is unsound, it cannot be reasonable to expect that the rule can—let alone likely will—be rehabilitated.

The Rule is all the more "seriously deficient" because the SEC "was on notice about the problems" with the Rule's principal rationale when it issued the regulation. *Texas II*, 20 F.4th at 1000. As this Court recognized, the investor-uncertainty rationale only makes sense to the extent the SEC can show that "improperly motivated buybacks are actually a problem." Op. 21. But the SEC has already backed off that factual assertion in the face of fatal criticism. So there is no reason to believe it will be able to substantiate it on remand.

In the Proposed Rule, the SEC *was* willing to claim that improperly motivated buybacks were a genuine problem. It asserted that "research has shown that repurchases can serve as a form of real earnings management" to meet "short-term earnings management objectives"

rather than promote long-term value. 87 Fed. Reg. 8443, 8444-45 (Feb. 15, 2022). And the agency openly touted as a benefit of the Rule that it would "reduce [the] opportunistic uses of buybacks." *Id.* at 8457.

During the comment period, the Chamber of Commerce and others contested these assertions, pointing out the lack of evidence that opportunistic buybacks are a genuine problem. *See* Admin. Dkt. 70 (Comment II) at 2-5; Final Rule 16 n.38. In the Final Rule, the SEC acknowledged this criticism and sought to respond, primarily by retreating from its claim that opportunistic buybacks in fact occur. Final Rule 16-19. Instead, it claimed only that "personal benefit *may* be *a* factor in determining whether to undertake a share repurchase." *Id.* at 17 (emphases added); *see* Op. 21 n.25 (acknowledging the SEC's concession that "'the rule was explicitly *not* premised on th[e] notion' that 'improperly motivated buybacks regularly occur in significant numbers'"). In short, the SEC has already backed off the factual claim it must make if it hopes to salvage the Rule. The Rule's defects are thus incurable.

**3.**     The SEC is unlikely to cure the Rule's other flaws as well. This Court found that the Rule's secondary price-discovery rationale is "internally contradictory." Op. 23. That is, the SEC claimed the Rule both

would and would not reveal "valuable new information," depending on whether the agency was trying to puff up the Rule's benefits or downplay its costs. *Id.* This rationale is thus not merely un- or underexplained; it is at odds with itself and thus positively "illogical." *Id.* A more detailed explanation cannot change the fact that the SEC wants to "have it both ways." *Id.*

Likewise, it is "far from certain" that the SEC would be able to repromulgate the Rule after considering the Chamber's comments on quantification. *All. for Hippocratic Medicine*, 78 F.4th at 255. The Chamber's three suggestions "addresse[d] the prevalence of opportunistic repurchases" and the effect additional disclosures have on them. Op. 19-20. The SEC explicitly avoided trying to determine how frequently opportunistic buybacks occur. Op. 21-22. The agency thus lacks even a rough sense of what a quantitative analysis in line with the Chamber's suggestions would show. It cannot have any confidence that such an analysis would support taking the same course of action the SEC took based on blind speculation.

Finally, the SEC entirely overlooks Petitioners' "three additional reasons" why "the rule is arbitrary and capricious" that this Court found

14

unnecessary to address given its other holdings. Op. 13 n.9. If the SEC reissues the Rule, this Court will have to address these arguments, on which Petitioners are likely to prevail. *See* Opening Br. 50-60; Reply Br. 24-29. Yet the SEC gives no indication that it intends to address—let alone will succeed in curing—these defects on remand.[1]

## B. Continued Remand Without Vacatur Will Cause Serious Disruption.

A prolonged and indefinite period of remand will cause uncertainty and disruption for issuers and investors, which cuts decisively in favor of vacating the Rule on December 1. By contrast, vacatur will not prejudice the SEC. The Rule has never taken effect and has now been stayed, and the agency does not even purport to identify any urgent circumstances that would make reissuing a new rule, following notice and comment, impractical. Refusal to vacate, on the other hand, risks seriously prejudicing Petitioners' members and other regulated parties. If the Rule is allowed to go into effect, issuers will face millions of dollars in

---

[1] In addition, if the SEC is somehow able to salvage its investor-uncertainty rationale, this Court will also have to consider the Rule's failure to take into account the Insider Trading Rule. *See* Opening Br. 45-47; Reply Br. 22-23.

unrecoverable compliance costs. And absent vacatur, the SEC will have the discretion to let the Rule spring back into effect at a time of its own choosing, and based solely on its own assessment of what "justice [] requires," Dkt. 128 at 7, engendering long-term uncertainty in the regulated community.

**1.** Vacatur is unduly disruptive when "the egg has been scrambled and there is no apparent way to restore the status quo ante." *Am. Equity Inv. Life Ins. Co. v. SEC*, 613 F.3d 166, 179 (D.C. Cir. 2010) (cleaned up). In contrast, where a rule by "its own terms … has not yet gone into effect," concerns about disruption are minimal. *Id.*

Further, because "remand without vacatur" is an exercise of "the court's equitable remedial authority," *Me. Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv.*, 70 F.4th 582, 602 n.3 (D.C. Cir. 2023), the disruptive effects of vacatur for the agency must be balanced against the disruptive effects of withholding vacatur for the challengers and other regulated parties, *see Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Engineers*, 781 F.3d 1271, 1290 (11th Cir. 2015) ("In deciding whether an agency's action should be remanded without vacatur, a court must

balance the equities."); *Cent. Me. Power Co. v. FERC*, 252 F.3d 34, 48 (1st Cir. 2001) (similar).

Accordingly, courts insist on vacating defective agency orders where remand without vacatur risks forcing the challenger to suffer "irreparable harm" before it "has access to judicial relief." *Env't Def. Fund v. FERC*, 2 F.4th 953, 976-77 (D.C. Cir. 2021); *accord Ameren Servs. Co. v. FERC*, 880 F.3d 571, 584-85 (D.C. Cir. 2018). In contrast, where it is clear the challenger "will not suffer harm—irreparable or otherwise—" from leaving an agency rule in place in the interim, courts are more likely to permit remand without vacatur. *Oglala Sioux Tribe v. NRC*, 896 F.3d 520, 538 (D.C. Cir. 2018); *accord Advocs. for Highway & Auto Safety v. FMCA*, 429 F.3d 1136, 1151 (D.C. Cir. 2005).

2.    The SEC will suffer no disruption from vacatur. No reliance or other interests will be upset by that standard remedy. By its terms, the Rule is not yet in effect, because the first filings governed by the Rule are not due until after the completion of the final quarter of 2023. Final Rule 96. Moreover, the SEC has now stayed the Rule. Vacatur thus means only that the existing disclosure requirements governing

buybacks that have been in place since 2003 will remain in place until the SEC decides to issue new requirements. *See id.* at 5.

Nor will vacatur unduly frustrate the SEC's legitimate policy objectives. To begin, as far as the APA is concerned, the SEC has failed to substantiate *any* benefit that the Rule purportedly provides. Op. 20-25. Even setting that aside, the SEC has identified no reason why the Rule must remain in effect *now* before its defects are corrected. By its own terms, the Rule does not address some urgent, overriding need that justifies keeping an unlawful rule in place instead of allowing the preexisting regulatory regime to continue operating. *See* Resp. Br. 2 (characterizing the Rule as a "modest amendment to existing disclosure requirements").

Vacatur also would not prejudice the SEC—as suggested by the SEC's own indefinite stay order. To the extent the agency has a legitimate basis to reissue a new rule, after correcting this Rule's defects, vacatur does not prevent it from doing so. The remedy simply recognizes that the SEC has not identified exceptional circumstances justifying keeping a flawed Rule in place before the agency has satisfied the APA's requirements.

**3.** In contrast, allowing the Rule to take effect would impose serious, irreparable harms on issuers and others. If the Rule's requirements go into effect, issuers—including over 350 members of the Chamber and over 50 members of the Texas Association of Business— will need to spend over 69,000 hours annually on the Rule's disclosures, as well as almost $14 million in outside professional costs (such as lawyers' fees) each year. Final Rule 169; Quaadman Decl., Dkt. 40-2, ¶¶ 8-17; Hamer Decl., Dkt. 40-3 ¶¶ 6-15. These figures do not include the Rule's indirect costs, such as causing companies to forgo repurchases that would otherwise have been in shareholders' interests. *See* Opening Br. 58-59; Final Rule 134.

These harms are irreparable. Because the SEC enjoys sovereign immunity from suits for money damages, issuers cannot recover compliance costs after they have incurred them. And, as this Court has repeatedly held, "the nonrecoverable costs of complying with a putatively invalid regulation [] constitute irreparable harm." *Rest. L. Ctr. v. Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023) (collecting cases). Even with the stay in place, issuers still have to incur compliance costs now, given the threat that the SEC could lift the stay at any time. *Infra* at 22-23.

Allowing the Rule to take effect would be particularly inequitable because it is so uncertain what the Rule actually requires. As noted, the Rule's "requirements are clear as mud." Op. 24. Issuers may not "'rely[] on boilerplate language' but are offered no guidance except a non-exclusive and non-exhaustive list compiling myriad suggestions from commentators." *Id.* And "there is no safe harbor even for issuers whose disclosures discuss all the rule's suggestions." *Id.* Issuers should not have to guess what they need to do to avoid liability when the SEC's failure to comply with the APA is the cause of the uncertainty.

To avoid irreparable harm, issuers need certainty now. The Rule covers repurchases made as early as October 1, 2023, Final Rule 96, meaning it is almost certain that some issuers are already incurring the costs of tracking more closely their repurchase activity. And issuers will have to make their first disclosures under the Rule as early as February 29, 2024. *See* 17 C.F.R.§ 249.310(b) (requiring "large accelerated filers" to file their Form 10-K disclosures within "60 days after the end of the fiscal year"). Under the SEC's estimates, by the time of this first disclosure, subject issuers will have expended over 17,000 hours and $3 million in professional costs (*i.e.*, one quarter of the annual costs)

20

complying with the Rule. Extending the SEC's deadline to act will thus unjustifiably expose Petitioners' members to "irreparable harm" before they can obtain "access to judicial relief." *Env't Def. Fund*, 2 F.4th at 977.

Indeed, throughout this litigation, all parties and this Court have recognized the need for urgency to safeguard issuers from irreparable harm. To ensure prompt resolution before the first filings under the Rule would occur, the parties jointly agreed to, and this Court approved, expedited briefing. *See* Dkt. 72 at 3 & n.1. Once briefing was complete, Petitioners moved to expedite argument. *Id.* at 1. The SEC did not oppose the motion. *Id.* This Court granted it, Dkt. 86, and heard oral argument just 28 days after Petitioners filed their motion, Dkt. 112. The consistent conduct of the parties and this Court calls for a final answer on the Rule's lawfulness by this Court's original deadline.

**4.** The SEC's unilateral stay order is not an adequate substitute for the disruptive effects of continued remand without vacatur. The order effectively allows the agency to let the Rule take effect at any time, without issuing a new, lawful rule and without further action by this Court. It also lets the agency issue a revised rule without following all its obligations under the APA. And it leaves issuers uncertain as to when

the stay will be lifted and the Rule's requirements allowed take effect, forcing them to continue incurring significant costs to prepare to comply with its unlawful requirements. Only vacatur provides a measure of certainty and properly protects the interests of Petitioners' members and other issuers.

Unlike vacatur, the stay order allows the Rule to take effect at any time. Because vacatur "rescinds the unlawful agency action" at issue, an agency cannot enforce a vacated rule unless it reissues the rule after following all applicable APA requirements. *All. for Hippocratic Med.*, 78 F.4th at 254. In contrast, the SEC's stay order keeps the Rule from taking effect only "pending further Commission action." Dkt. 128 at 7. Nothing in the order or the agency's Motion indicates that only a proper reissuing of the Rule, following notice and comment, constitutes "Commission action." "Commission action" could include a determination that the "interests of justice," *see id.*, call for allowing the Rule to take effect before its defects are corrected. Or it could mean allowing the Rule to take effect while this Court considers a renewed challenge by Petitioners following remand. Since it is not otherwise entitled to further remand without vacatur, the SEC has no basis for claiming this unilateral power to

impose irreparable harm at will and, at minimum, create serious uncertainty for issuers.

In addition, the SEC's proposed approach would allow it to skirt notice-and-comment rulemaking. This Court's limited remand allows the SEC to correct the Rule's defects without again going through the process of notice-and-comment rulemaking. This can perhaps be justified where all that is needed from the agency is a minor, ministerial act like responding to an overlooked comment. But the SEC's Motion virtually concedes that this is not the case here, since 30 days have not been enough and the most the agency can offer is that, *60 days* from now, it will provide the Court "an *update*" on where its work to fix the Rule stands. Mot. ¶ 5 (emphasis added).

In contrast, after vacatur, the agency must restart the rulemaking process from scratch, which includes the notice-and-comment procedures required by 5 U.S.C. § 553. *See Am. Pub. Gas Ass'n v. Dep't of Energy*, 72 F.4th 1324, 1339-40 (D.C. Cir. 2023). Since, as the SEC effectively admits, fixing the Buyback Rule will require a significant overhaul of its reasoning, the agency should be required to follow notice and comment,

so that any reissued rule properly takes into account the views of the public. The SEC has given no reason for discarding this requirement.

* * *

The Rule is unlawful and the SEC has admitted that it cannot timely correct its defects. The Commission should not be allowed to impose months of uncertainty and millions of dollars in compliance costs on Petitioners' members before it corrects those defects and complies with all the procedural requirements of the APA. Only vacatur adequately safeguards Petitioners' interests.

## CONCLUSION

This Court should deny the Motion to extend the remand period and allow the Final Rule to be automatically vacated on December 1, 2023, if the SEC does not correct the Rule's deficiencies before that date.

Dated: November 24, 2023

Respectfully submitted,

*/s/ Noel J. Francisco*

Tara S. Morrissey
Tyler S. Badgley
Kevin R. Palmer
U.S. CHAMBER LITIGATION
CENTER
1615 H Street, N.W.
Washington, DC 20062
(202) 463-5337

Noel J. Francisco
Brian C. Rabbitt
Brinton Lucas
Charles E.T. Roberts
Ryan M. Proctor
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
(202) 879-3939
njfrancisco@jonesday.com

Alexander V. Maugeri
JONES DAY
250 Vesey St.
New York, NY 10281
(212) 326-3939

*Counsel for Petitioners*

# CERTIFICATE OF SERVICE

I certify that on November 24, 2023, I served a copy of the foregoing

on all counsel of record by CM/ECF.

Dated: November 24, 2023

*/s/ Noel J. Francisco*
Noel J. Francisco
*Counsel for Petitioners*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume, typeface, and type-style requirements of Federal Rule of Appellate Procedure 27(d)(2) and Fifth Circuit Rules 27.4, 32.1, 32.2. Excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2, the response contains 4,914 words and was prepared using Microsoft Word and produced in Century Schoolbook Standard 14-point font.

Dated: November 24, 2023

/s/ Noel J. Francisco
Noel J. Francisco
*Counsel for Petitioners*